COMMONWEALTH *vs.* RICHARD JOSEPH GAGNE.

Hampden. December 2, 1974. — April 28, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Homicide. Malice. Self-Defense. Practice, Criminal,* Charge to jury, New trial.

At a murder trial, where there was evidence that the defendant intentionally fired shots from a revolver which killed the victim, evidence tending to support the defendant's contention that the shooting was in self-defense did not as matter of law rebut or eliminate the inference of malice on his part arising from his use of a deadly weapon, but merely presented a factual issue for the jury. [522-524]

There is a duty to retreat, if possible, before resorting to the use of deadly force in self-defense where one is attacked in his place of business. [524-525]

Although a certain issue could have been, but was not, raised by the defendant at a criminal trial, where he sought to raise it on a motion for a new trial and the judge in his discretion ruled on it, the ruling was open to review on appeal. [525-526]

Although the charge to the jury in a murder case could have been more specific in explaining that excessive force in self-defense or failure to retreat could warrant a finding of only manslaughter, the lack of specificity did not constitute reversible error in the circumstances. [526]

In a murder case where it appeared that the defendant shot and killed the victim at the defendant's place of business after he had closed it one evening and that the defendant relied on self-defense with respect to the shooting, there was, on the record, no merit in a contention by the defendant that a new trial should be granted on the ground that a verdict of guilty of murder in the second degree was against the weight of the evidence. [526-527]

INDICTMENT found and returned in the Superior Court on March 8, 1971.

The case was tried before *Tisdale,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*William K. Danager, Jr. (Daniel M. Keyes, Jr.,* with him) for the defendant.

*John T. McDonough,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J. The defendant was convicted of murder in the second degree and appeals pursuant to G. L. c. 278, §§ 33A-33G. He assigns as error (1) the trial judge's failure to direct a verdict on so much of the indictment as charged murder, (2) the judge's refusal to grant a new trial, and (3) the instructions to the jury on malice and self-defense. We find no error and affirm the judgment below.

The evidence at the trial was contradictory, with the following testimony introduced: The defendant was a pharmacist employed in a pharmacy owned by his father. On the night of the homicide, the defendant closed the store at approximately 9 P.M. but remained working in the prescription area in the rear. Sometime after ten o'clock the defendant heard glass break in the front of the store. He drew his revolver, went to the front to investigate, and found a window broken. He opened the door and searched the area outside but was unable to find anyone. He returned to the store and started to call the police when he heard the sound of someone running inside the pharmacy. He saw someone trying to get out the front door who then turned toward the defendant, said "son-of-a-bitch," and pointed a gun in his direction. The defendant took his revolver out of his pocket and fired two shots. The victim fell and the defendant immediately called the police. The defendant was taken to the police station, where he gave a statement disclosing essentially the facts set out above.

It was subsequently revealed that the defendant had known the victim prior to the shooting and had attempted to assist him with some problems the victim

was having with Provincetown authorities regarding his position as a pharmacist there. The victim had attended the pharmacy school where the defendant taught, and in fact had had the defendant as a teacher. Approximately two months before the shooting, the defendant had informed the victim that he could not help him.

In his statement to police, the defendant was very specific as to everything he had done on the night of the shooting. However, the day after the incident, he notified police that he forgot to tell them about a telephone call from Mrs. Helen A. Simkins, with whom he was talking when he heard the glass break, and who held the line open while he made his search. Mrs. Simkins testified in the defendant's behalf.

The defendant also had neglected to tell police in his statement about one Frederick Wasilenko, who the defendant later claimed had come into the store between 10 and 10:20 P.M. to purchase some items. The defendant told police about Wasilenko after the police had been informed by one William R. Roberts that he had seen the defendant and another man conversing in the store between 10:15 and 10:30 P.M. Roberts described the man he had seen in the store, and although Wasilenko, whom he had known for many years, fit the description, Roberts testified that he was certain it was not Wasilenko.

The defendant's testimony at the trial was substantially the same as his prior statement to police, except for the telephone call from Mrs. Simkins and the visit by Wasilenko. There was some inconsistency in the timing of the calls and visits, but otherwise defense witnesses corroborated the defendant's account of the night in question.

The defendant contends that he was surprised by an intruder whose identity was not known to him at the time and upon being faced with a gun he reacted in self-defense by shooting his assailant. The Commonwealth's contention was somewhat different: It contended

that the defendant and the victim had a pre-arranged meeting, something went wrong, and the defendant shot and killed the victim. The case went to the jury with instructions on murder in the first degree, murder in the second degree, and manslaughter, and the jury returned a verdict of guilty of murder in the second degree.

1. The defendant assigns as error the denial of his motion for a directed verdict on so much of the indictment as charged murder. He contends that the Commonwealth failed to make out a prima facie case of murder and that reliance on the presumption of malice was error. We disagree.

It has long been recognized in this Commonwealth that malice may be inferred from the intentional use of a deadly weapon. *Commonwealth* v. *Webster,* 5 Cush. 295, 305 (1850). *Commonwealth* v. *York,* 9 Met. 93, 103 (1845). *Commonwealth* v. *Young,* 326 Mass. 597, 600 (1950). *Commonwealth* v. *Kendrick,* 351 Mass. 203, 209-210 (1966). The existence of malice may be rebutted, however, by showing that the homicide was committed in self-defense and is therefore excusable, or by showing circumstances which, although not justifying the act, would mitigate the crime from murder to manslaughter. *Commonwealth* v. *Kendrick, supra.* It does not necessarily follow, however, that where there is *any* evidence of mitigating circumstances, the inference of malice is rebutted. Such a holding would, in effect, require the Commonwealth to prove actual malice in any case where there is any evidence of mitigating or justifying circumstances. This has never been the law of the Commonwealth, and the defendant's reliance on the *York, Webster,* and *Kendrick* cases, *supra,* is misplaced.

In the instant case, the Commonwealth's contention was supported by evidence of the defendant's prior relationship with the victim and his having been seen talking to someone who fit the description of the victim immediately before the killing. Additionally, the jury may have disbelieved testimony of the two defense

witnesses, who were not included in the defendant's original statement, as an attempted cover up. Thus, the jury were warranted in finding that the gun was fired intentionally and in inferring malice from the circumstances, as the verdict indicates.

In sum, we cannot agree that the inference of malice was rebutted as matter of law. The jury were not required to believe the defendant or his witnesses. The mere fact that there was some evidence in support of the defendant's theory did not, per se, eliminate the inference of malice. It merely presented a factual issue for resolution by the jury.[1] The burden at all times was on the Commonwealth to prove the defendant guilty beyond a reasonable doubt. The defendant's testimony in rebuttal of the inference of malice was not sufficient to create a reasonable doubt as matter of law.[2] We there-

---

[1] The Supreme Court of Pennsylvania, in a similar case challenging the "presumption of malice," agreed with the holding we reach here. The court there stated: "Such a presumption does not mean that the jury *must* conclude, upon proof of a felonious homicide, that malice existed, but that, upon such proof being made, and in the absence of extenuating circumstances, a jury is *warranted* in determining that malice has been sufficiently shown to justify a conviction of murder; whether, under all the evidence in the case, malice did in fact exist, is for the jury's ultimate decision." *Commonwealth* v. *Wucherer*, 351 Pa. 305, 311 (1945). Although this case was decided before *In re Winship*, 397 U. S. 358 (1970), which raised the "beyond a reasonable doubt" standard to constitutional dimension, the holding was reaffirmed in *Commonwealth* v. *O'Neal*, 441 Pa. 17 (1970), which postdated the *Winship* case.

Similarly, the Michigan Court of Appeals recognized, as we do here, that we are involved with a "permissible inference rather than a presumption" when discussing malice in this context. *People* v. *Morrin*, 31 Mich. App. 301, 318 (1971). *State* v. *Cuevas*, 53 Hawaii 110 (1971), cited by the defendant, does not indicate a contrary result, as there the court struck down as unconstitutional a *mandatory* presumption of malice. Under our law, the inference of malice is merely permissive, and the issue is ultimately left to the jury for determination.

[2] This is not like *Wilbur* v: *Mullaney*, 496 F. 2d 1303 (1st Cir. 1974), cert. granted 419 U. S. 823 (1974), where arguably the burden

fore hold that the trial judge's refusal to direct a verdict on the murder charge was not error.

2. The defendant contends that the judge erred in charging the jury that the law infers malice from the use of a deadly weapon. The defendant argues that the judge, in doing so, effectively took the case out of the category of manslaughter. After careful review of the charge as a whole, *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968); *Commonwealth* v. *Benders*, 361 Mass. 704, 708 (1972); *Commonwealth* v. *King*, 366 Mass. 6, 10 (1974), we cannot agree with the defendant's contention. The jury were carefully and properly instructed on both manslaughter and the inference of malice. There was no error.

3. The defendant next argues that the judge erred in charging the jury that the defendant had a duty to retreat before resorting to the use of deadly force. There is no merit to this contention.

Although the defendant recognizes that we follow the rule that a person attacked with deadly force must retreat whenever it is possible to do so in safety, *Commonwealth* v. *Crowley*, 168 Mass. 121, 126 (1897), *Commonwealth* v. *Houston*, 332 Mass. 687, 690 (1955), *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211-212 (1966), he urges us to create an exception where one is attacked in his place of business. See, e.g., *State* v. *Sharpe*, 18 N. C. App. 136 (1973); *Commonwealth* v. *Johnston*, 438 Pa. 485 (1970). See also anno. 41 A. L. R. 3d 584 (1972). In *Commonwealth* v. *Shaffer*, *ante*, 508, 511 (1975), we were asked to adopt a similar exception where one is threatened in his own home. We declined to do so, holding that the location of the assault is just one of the factors, although an important one, to be considered by the jury. See *Commonwealth* v. *Barton*, *ante*, 515, 518,

was placed on the defendant to prove the elements of mitigation. Here, the prosecution began with, and retained, the burden of proving every element of the offense beyond a reasonable doubt.

(1975). The reasoning of the *Shaffer* case applies equally to the instant case.[3] Accordingly, there was no error in the judge's instruction that the right of self-defense does not accrue unless a person has reasonably availed himself of all proper means in his power to avoid the combat.

The defendant argues that even if there is a duty to retreat, the trial judge erred in failing to charge the jury specifically that they should consider that the assault took place in the defendant's place of business. Although we stated in the *Barton* case, *supra*, at 518, fn. 2, that the best procedure is for the judge to explain specifically what factors are to be considered, we cannot say that, taken as a whole, the charge in this case constituted reversible error. The judge instructed the jury to consider all the circumstances in determining whether the defendant was justified in using deadly force. He distinguished between an attack in the home and one on the highway,[4] and left it for the jury to determine what the facts of this case required. In light of all the circumstances, we find no error in the judge's charge.

4. The defendant argues that the judge erred in his charge to the jury because he did not make clear that, if the jury found that the defendant acted in self-defense

---

[3] See *Commonwealth* v. *DeCaro*, 359 Mass. 388, 390 (1971), where we stated, "The defendant's . . . [contention] that there is no requirement of retreat . . . where the attack occurs at the place of employment of the one attacked, find[s] no support in our law."

[4] In his charge, the judge stated: "I think we all would give different considerations to the matter on the question of self defense if it was in a person's home, as distinguished from where the act was out on a highway, or in the woods, or something like that." Sometime later, in response to a question asked by the jury, the judge stated: "The jury should consider the situation as it looked to him . . .. Consider all that took place, what the defendant had seen and heard there are to be considered as circumstances bearing on the defendant's situation. You are also to consider all that took place where the homicide took place. . . . You should determine the facts — what took place at this pharmacy on this night as it comes to your attention by virtue of the evidence produced in this courtroom."

but went beyond what was necessary in the circumstances, the offense would be manslaughter. Defense counsel did not object to this aspect of the charge at trial, and ordinarily it would not be before us for review. *Commonwealth* v. *Concepcion,* 362 Mass. 653, 654 (1972). However, the defendant, in connection with his motion for a new trial, made a request for a ruling on this question, which request was ruled on and denied by the trial judge. Since the judge exercised his discretion in favor of considering the issue, we may also consider it on review. *Commonwealth* v. *Blondin,* 324 Mass. 564, 566-567 (1949), cert. den. 339 U. S. 984 (1950). We find no error.

In examining the jury charge as a whole, we are convinced that the jury were made aware of all the options available in reaching their verdict. Although the charge could have been more specific in explaining that excessive force or failure to retreat could warrant a finding of manslaughter, the lack of specificity in the instant case, when considered in light of all the circumstances, does not constitute reversible error.

5. The defendant contends that the trial judge erred in denying his motion for a new trial. Such a motion is addressed to the sound discretion of the trial judge, *Commonwealth* v. *Hamilton,* 353 Mass. 746 (1967); *Commonwealth* v. *Breen,* 357 Mass. 441, 448 (1970), and we find no abuse of discretion.

In support of his motion, the defendant argued the points discussed earlier in this opinion. As we have stated, we find no merit in any of these contentions.

Neither is there merit to the defendant's argument that the verdict was against the weight of the evidence. There was sufficient evidence from which the jury could have found that more than an hour after closing the defendant met in his place of business with a person he knew and with whom he had prior dealings. The two conversed, and then as the victim approached the door, he was shot twice with a gun the defendant had been

carrying for only a few days.   Although these inferences were not required from the evidence, they were both reasonable and possible.    That is all that is necessary. *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197 (1968). *Commonwealth* v. *Lussier,* 364 Mass. 414, 421 (1973). *Commonwealth* v. *Gilbert,* 366 Mass. 18, 29 (1974). *Commonwealth* v. *Montecalvo, ante,* 46, 54 (1975). Accordingly, there was no error in the trial judge's refusal to grant a new trial.

6. Pursuant to the requirements of G. L. c. 278, § 33E, we have reviewed the entire transcript and record and have found no reason either to order a new trial or to direct a verdict of a lesser degree of guilt.

*Judgment affirmed.*