Richard Joseph **GAGNE**

v.

Larry R. **MEACHAM.**

Civ. A. No. 75–4777–F.

United States District Court, D. Massachusetts.

Nov. 10, 1976.

---

William K. Danaher, Jr., Keyes, Donnellan, Danaher and Scibelli, Springfield, Mass., for plaintiff.

Matthew J. Ryan, John T. McDonough, Springfield, Mass., for defendant.

FREEDMAN, District Judge.

This matter is before the Court on the petition of Richard Joseph Gagne for a writ of habeas corpus. Gagne is presently serving a life sentence at the Massachusetts Correctional Institution at Norfolk, as the result of his conviction in the Massachusetts Superior Court sitting in Hampden County on February 20, 1973, for the crime of murder in the second degree. Gagne alleges in his petition that he has been imprisoned pursuant to an illegal sentence in that he was denied due process of law as guaranteed by the Fourteenth Amendment. More specifically, he asserts three alleged violations:

1. The trial judge failed during the trial to require the prosecution to prove beyond a reasonable doubt malice as an essential ingredient of the crime of murder.
2. The use of "inherently incredible" testimony by the prosecution and its subsequent approval by the state appellate court decreased the prosecution's burden of proof and left the conviction unsupported by an adequate record.
3. The state appellate court based its decision as to the challenge that the jury verdict was against the weight of the evidence on factual determinations that were without support in the record.

Having considered the record and all relevant authorities, the Court orders that the petition be denied.

Before discussing the reasoning behind the Court's decision, it would be helpful to set forth in more detail the history of Gagne's case subsequent to his conviction, as well as the basis for his first allegation regarding denial of due process.

Following the conviction of Gagne on February 20, 1973, a motion for new trial was filed February 27, 1973. It was heard on April 26, 1973, in conjunction with a request for rulings of law on the motion for new trial. The motion was denied on July 17, 1973.

Gagne claimed an appeal to the Supreme Judicial Court of Massachusetts on March 1, 1973. The appeal was argued on December 2, 1974, and the judgment of conviction was affirmed on April 28, 1975. Gagne subsequently filed a petition for rehearing on May 20, 1975. It was denied by the Court on May 28, 1975.

The primary question that forms the basis of petitioner's allegations is whether a defendant in a murder case should bear the burden of proving the nonexistence of malice, an essential element of the crime. While Gagne acknowledges that a presumption of malice arises in any intentional homicide, it is his contention that

once a jury issue is generated with respect to mitigation, justification or excuse, whether the issue arises from the Prosecution's case or from evidence produced by the Defendant, the presumption of malice must be totally dissipated. Once the issue is generated with respect to mitigation or justification the State must assume the burden of persuasion on that issue beyond a reasonable doubt.

Gagne alleges that statements made by him which served as a basis for the Commonwealth's proof of malice were in addition sufficient to raise the issues of self-defense and mitigation. He continues by asserting that, as a result of the presentation of those issues, the presumption of malice was rebutted and the burden fell upon the Commonwealth to prove that element of the crime beyond a reasonable doubt. Gagne further argues that, despite the fact that issues of mitigation and self-defense were established at trial, the trial judge charged the jury on the issue of malice in such a way that the jury was "required to presume the existence of malice unless the Petitioner rebutted the presumption of malice by persuading the jury" as to the presence of factors that would lessen the seriousness of the crime. It is petitioner's claim that a violation of due process arose

by reason of the fact that the judge's charge, taken in its entirety, improperly placed upon him the burden of persuasion. Petitioner continues by asserting that while he had a duty to do so, the judge never made it clear "to the jury that malice *may*, but not necessarily *must*, be presumed from an intentional act." (Emphasis in original).

Petitioner's constitutional argument is grounded on the position set forth by the United States Supreme Court in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Dealing with a conviction that had taken place in Maine, *Mullaney* states:

> Maine law requires a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. Under this burden of proof a defendant can be given a life sentence when the evidence indicates that it is *as likely as not* that he deserves a significantly lesser sentence. This is an intolerable result in a society where, to paraphrase Mr. Justice Harlan, it is far worse to sentence one guilty only of manslaughter as a murderer than to sentence a murderer for the lesser crime of manslaughter. *In re Winship*, 397 U.S., at 372 [90 S.Ct. 1068] (concurring opinion). We therefore hold that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case.

421 U.S. at 703, 95 S.Ct. at 1892, (emphasis in original). While an initial reading of *Mullaney* might give the impression that the Supreme Court was dealing only with instructions as to the allocation of the burden of proof relating to "the heat of passion on sudden provocation when the issue is properly presented in a homicide case," I would agree with the Court of Special Appeals of Maryland that

> a fairer reading makes it clear that what is involved is the broader question of the allocation of the burden of persuasion where a wrongful allocation of that burden will operate to relieve the State of its obligation under the Due Process Clause, as interpreted by *Winship*, to prove each and every element of a criminal offense beyond a reasonable doubt.

*Evans v. State*, 28 Md.App. 640, 349 A.2d 300, 322 (1975). The holding in *Mullaney* appears to be merely an application of the broad constitutional principle set forth in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which specifically held that

> the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

397 U.S. at 364, 90 S.Ct. at 1073.

The position taken by the Massachusetts Courts regarding malice was established in the mid-nineteenth century in the landmark case of *Commonwealth v. York*, 50 Mass. (9 Met.) 93 (1845). In *York*, the defendant, convicted of murder, had filed a motion for a new trial on the ground that the jury had been misdirected. More specifically, several hours after the trial judge had charged the jury and deliberation had begun, the jury sent to the court the following question:

> "Were the jury instructed by the court, that the prisoner must prove provocation or mutual combat, and was not to have the benefit of any doubts on the subject?"

50 Mass. at 94. The court responded in the following manner:

> "It is hardly possible to give a direct answer, affirmative or negative, to the question of the jury, without some explanation. The rule of law is, when the fact of killing is proved to have been committed by the accused, and nothing further is shown, the presumption of law is that it is malicious, and an act of murder. It follows, therefore, that in such cases the proof of matter of excuse or extenuation lies on the accused; and this *may appear*, ether from evidence adduced by the prosecution, or evidence offered by the defendant. But where there is any evi-

dence tending to show excuse or extenuation depends, according to the preponderance of evidence. Where there is evidence on both sides, it is hardly possible to imagine a case in which there will not be a preponderance of proof on one side or the other. But if the case, on the evidence, should be *in equilibrio*, the presumption of innocence will turn the scale in favor of the accused; that is, in a case like the present, in favor of the lesser offence. But if the evidence, in the opinion of the jury, does not leave the case equally balanced, then it is to be decided according to its preponderance."

*Id.* Asserting that the jury had been misdirected, defendant claimed that "the jury should have been instructed that, if there was sufficient evidence to raise a reasonable doubt, whether the homicide was malicious, or committed in heat of blood in mutual combat, or suddenly, upon adequate provocation, so as to extenuate it to manslaughter, then they should return a verdict of manslaughter." *Id.* at 101. In his consideration of this question, Chief Justice Shaw discussed at length the attitudes expressed in the common law. He concluded:

> [T]he fact of killing is *prima facie* evidence of malice, and unless overcome by preponderating proof the other way, it must be held murder, and judgment go accordingly.

*Id.* at 115. A majority of the court felt that the trial judge's instruction had been correct and the motion for a new trial was denied. *Id.* at 125.[1]

In the case now before this Court, petitioner claims that the instructions to the jury on malice were based upon and given in the same formulation set forth in *York*. It is his contention, that in light of the Supreme Court's decision in *Mullaney,* to so instruct the jury deprived him of due process.

*Mullaney* was argued before the Supreme Court on January 15, 1975, and decided on June 9, 1975. In its decision, the Supreme Court gave specific reference to *Commonwealth v. York*. After reiterating the Supreme Judicial Court's position in the Massachusetts case "that the defendant was required to negate malice aforethought by proving by a preponderance of the evidence that he acted in the heat of passion," and mentioning that *York* was adopted in several jurisdictions, including Maine, it states that in 1895, in the case of *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); it "explicitly considered and unanimously rejected the approach articulated in *York*." It adds that a majority of the states have in the past 50 years abandoned *York* and "now require the prosecution to prove the absence of the heat of passion on sudden provocation beyond a reasonable doubt." *Id.*, 421 U.S. at 696, 95 S.Ct. at 1888.

The appeal of petitioner's conviction was argued December 2, 1974, and decided April 28, 1975. *Commonwealth v. Gagne,* 326 N.E.2d 907 (Mass.1975). His conviction was affirmed. Discussing the issue of malice, Chief Justice Tauro stated:

> It has long been recognized in this Commonwealth that malice may be inferred from the intentional use of a deadly weapon. *Commonwealth v. Webster*, 5 Cush. 295, 305 (1850). *Commonwealth v. York*, 9 Metc. 93, 103 (1845). *Commonwealth v. Young*, 326 Mass. 597, 600, 96 N.E.2d 133 (1950). *Commonwealth v. Kendrick*, 351 Mass. 203, 209–210, 218 N.E.2d 408 (1966). The existence of malice may be rebutted, however, by showing that the homicide was committed in self-defense and is therefore excusable, or by showing circumstances which, although not justifying the act, would mitigate the crime from murder to manslaughter. *Commonwealth v. Kendrick, supra.* It does not necessarily follow, however, that where there is *any* evidence of mitigating circumstances, the inference of malice is rebutted. Such a holding would, in ef-

---

1. Justice Wilde wrote a lengthy dissent, in which he argued that the Commonwealth should be required to prove all the facts necessary to establish the crime of murder. In addition, he rejected the doctrine of implied malice.

fect, require the Commonwealth to prove actual malice in any case where there is any evidence of mitigating or justifying circumstances. This has never been the law of the Commonwealth, and the defendant's reliance on the *York, Webster,* and *Kendrick* cases, *supra,* is misplaced.

*Id.* at 909 (emphasis in original). It was the court's conclusion that the inference of malice had not been rebutted as a matter of law. It added that the mere existence of some evidence supporting self-defense or mitigation did not, by itself, eliminate the inference, but "merely presented a factual issue for resolution by the jury." *Id.* at 910. The court then stated:

> The burden at all times was on the Commonwealth to prove the defendant guilty beyond a reasonable doubt. The defendant's testimony in rebuttal of the inference of malice was not sufficient to create a reasonable doubt as matter of law.

*Id.* (footnote omitted). The footnote to the above statement presents a curious viewpoint, referring to the *Mullaney* case which the Supreme Court then had under advisement:

> This is not like *Wilbur v. Mullaney,* 496 F.2d 1303 (1st Cir. 1974), cert. granted 419 U.S. 823, 95 S.Ct. 39, 42 L.Ed.2d 47 (1974) where arguably the burden was placed on the defendant to prove the elements of mitigation. Here, the prosecution began with and retained, the burden of proving every element of the offense beyond a reasonable doubt.

*Id.,* n. 2.

The court in *Gagne* also rejected defendant's contention that the judge erred in charging the jury that the law infers malice from the use of a deadly weapon. It concluded that "[t]he jury were carefully and properly instructed on both manslaughter and the inference of malice." 326 N.E.2d at 910.

**2.** Review of *Commonwealth v. Gagne* by the Supreme Judicial Court of Massachusetts in light of *Mullaney* also seems appropriate in view of that court's decision in *Commonwealth v. Rodriguez,* 1976 Mass.Adv.Sh. 1864, 352

While petitioner's allegation dealing with the issue of malice does not appear to be frivolous, and this Court recognizes that in that regard there may well have been a denial of due process in his case, I feel that I am unable at this time to reach the merits of his claim. It is clear under the law that this Court cannot grant a petition for writ of habeas corpus "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). After a review of the record, it appears as if petitioner herein has not exhausted those remedies. His conviction was affirmed in *Commonwealth v. Gagne* on April 28, 1975. His motion for rehearing was filed on May 20, 1975. In that motion, petitioner asserted that the April 28, 1975 decision was in direct conflict with *In re Winship* and *Wilbur v. Mullaney.* At that time, although certiorari had been granted in *Mullaney,* the case was still pending before the Supreme Court. Petitioner's motion for rehearing was denied by the Supreme Judicial Court on May 28, 1975. It was not until June 9, 1975 that the Supreme Court issued the *Mullaney* decision. Thus, although the Supreme Judicial Court was aware of the issues in *Mullaney* when it considered Gagne's petition for rehearing, it did not have the opportunity to consider those issues in light of the United States Supreme Court decision rendered more than one week later. It is my feeling that the doctrine of exhaustion affords that court such an opportunity. *Frazier v. Weatherholtz,* 411 F.Supp. 349, 351, n. 1 (W.D.Va. 1976). *See James v. Copinger,* 428 F.2d 235, 242 (4th Cir. 1970), *aff'd on rehearing,* 441 F.2d 23 (4th Cir.), *cert. denied, Callahan v. Slayton,* 404 U.S. 959, 92 S.Ct. 318, 30 L.Ed.2d 276 (1971).[2] This Court therefore has no choice but to deny Gagne's petition without reaching any of his allegations as to violation of due process.

The petition for writ of habeas corpus is denied.

N.E.2d 203, which appears to severely undermine, if not abandon, the holding in *York,* and adopt the position taken in *Mullaney* and *Winship.*