**Reginald LANNON, Petitioner,**

v.

**William HOGAN, et al., Respondents.**

**Civ. A. No. 80–1231–S.**

United States District Court,
D. Massachusetts.

Feb. 2, 1983.

John P. Courtney, Mass. Defenders Committee, Boston, Mass., for petitioner.

Roberta Thomas Brown, Asst. Atty. Gen., Comm. of Mass., Boston, Mass., for respondents.

MEMORANDUM AND ORDER

SKINNER, District Judge.

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 seeking relief from a 1972 Suffolk Superior Court conviction for first degree murder. The Supreme Judicial Court affirmed the conviction in 1974. *Commonwealth v. Lannon,* 364 Mass. 480, 306 N.E.2d 248 (1974). In 1978 petitioner filed a petition for writ of error alleging that the trial judge's charge to the jury improperly shifted the burden of proof to the petitioner on the issue of accidental death. A single justice denied the writ and the Supreme Judicial Court affirmed the denial. *Lannon v. Commonwealth,* 379 Mass. 786, 400 N.E.2d 862 (1980). A petition for rehearing was denied. In May, 1980, petitioner filed this writ of habeas corpus again challenging the

legality of the trial court's charge to the jury regarding burden of proof. For the reasons which follow, the petition is denied.

■ In general, improper jury instructions will not form the basis for federal habeas corpus relief. *Niziolek v. Ashe,* 694 F.2d 282, 290 (1st Cir.1982) *citing Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Before a federal court may overturn a state conviction based on improper jury instructions, it must determine that the instructions "so infected the entire trial that the resulting conviction violates due process". *Cupp v. Naughten, supra* at 147, 94 S.Ct. at 400. *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *Grace v. Butterworth,* 635 F.2d 1, 6 (1st Cir.1980), *cert. den.* 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981). Where jury instructions as a whole are "fundamentally sound", a petitioner's due process rights are not violated even though certain portions of the instructions may be flawed. *Niziolek v. Ashe, supra; Grace v. Butterworth, supra* at 6; *McInerny v. Berman,* 621 F.2d 20, 25 (1st Cir.1980) *cert. den.* 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 85 (1980).

■ The trial judge correctly set forth the government's burden of proof before going into the elements of the charged offenses. He explained the presumption of innocence and the government's burden of proof beyond a reasonable doubt. In connection with another charge against petitioner, assault and battery by means of a dangerous weapon on a second victim, the judge restated the government's burden of proof. The jury returned a verdict of not guilty on this charge.

Petitioner challenges several portions of the jury instructions on the grounds that they improperly reduced the prosecution's burden of proof and shifted the burden to the petitioner. The first challenge relates to the instructions on intent which included the following language:

[i]t is not often that a defendant charged with murder expresses in words

his intention to kill. But you may infer, that is, conclude, that a person ordinarily intends the natural and probable consequences of any act which is knowingly done. And if a person uses upon another an instrument or weapon of such a nature and in such a way and under such circumstances that the use would naturally and probably result in the death of the other, you may infer or conclude that he did so with that specific intention to kill. You are not required to come to that conclusion, but you may do so.

At the very outset of the charge the judge defined inferences in the following language:

You find facts, ladies and gentlemen, and then you are entitled to draw reasonable inferences from those facts as you find them. And reasonable inferences simply mean conclusions which are regarded as logical by reasonable people in the light of their experience in life.

In light of this definition, the challenged passage did not shift the burden of proof to the petitioner. The judge merely spelled out the permissive inference of intent which may be drawn from conduct. *Niziolek v. Ashe,* 694 F.2d 282, 293 (1st Cir.1982) citing *County Court of Ulster County v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). This is significantly different from the instruction held unconstitutional in *Sandstrom v. Montana,* 442 U.S. 510, 522–523, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979) where the trial judge stated "the law presumes that a person intends the natural consequences of his voluntary acts".

Our Court of Appeals has recently criticized jury instructions containing the language "it is ordinarily reasonable to infer that a person intends the natural and probable consequences of his acts knowingly done or knowingly omitted". *United States v. DeWolf,* 696 F.2d 1, 3 (1st Cir.1982); *United, States v. Greenleaf,* 692 F.2d 182, 187 (1st Cir.1982); *United States v. Ariza-Ibarra,* 605 F.2d 1216 (1st Cir.1979) *cert. den.* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d

209 (1981).[1] This instruction was not held to be reversible error, however, even in the exercise of the Court's supervisory function. The language in the present case does not contain a suggestion that it would be "reasonable" to infer intent and consequently unreasonable to fail to do so.

Petitioner argues that the use of the word "conclude" ("you may infer, that is conclude," ...) brings this case within the rationale of *Sandstrom*. The term "conclude" was defined by the judge as a synonym for "infer" and is equally permissive as used in this case. It does not bring this instruction within the prohibition of *Sandstrom*.

Petitioner's second challenge focuses on the instruction regarding malice which included the following:

And just as a specific intent to kill may be inferred from the circumstances, so malice may be inferred from the circumstances. Where a killing is caused by the intentional use of fatal force without circumstances serving to mitigate, to justify the act, you may infer that malice is present.

And once again, in determining whether a wrongful act is done with malice, you may infer or conclude that a person ordinarily intends the natural and probable consequences of acts knowingly done.

And I say to you that if a person uses a deadly weapon in killing another, malice may be inferred from his use of such a weapon in the absence of explanatory or mitigating circumstances. You may come to that conclusion; you are not required to come to it.

Again, the language regarding natural and probable consequences is permissive and therefore does not come within the prohibition of *Sandstrom*. The statement "malice may be inferred ... in the absence of explanatory or mitigating circumstances" did not violate the petitioner's constitutional

rights. While it would have been preferable for the court to explain that the government had the burden of proving the absence of explanatory or mitigating circumstances, the charge read as whole did not shift the burden of proof to the petitioner. Petitioner does not have a constitutional right to a statement negating any possible misapprehension on the part of the jurors. *Gagne v. Meachum,* 602 F.2d 471, 472–473 (1st Cir. 1979) *cert. den.* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979).

Petitioner also finds fault with the portion of the jury instructions regarding involuntary manslaughter. His major contention focuses on the following language:

Now, getting into the involuntary manslaughter situation, you have the testimony of this defendant that the gun went off accidentally, and that he had no intention of shooting that gun and no intention to kill.

If you accept that story, then you must consider whether or not, if you find it to be a fact, that loading that shotgun, as he said he did, and apparently with the safety off, and going to the door, was such wanton, reckless misconduct that he should be responsible for the natural and probable consequences of that reckless handling of the gun.

If you find that the gun was discharged accidentally, but his having it there under all the circumstances was wanton and reckless conduct on his part, he'd be guilty of involuntary manslaughter.

On the other hand, if it was an accidental discharge of that gun, and you consider his activity not to have been wanton and reckless in the way he handled that gun, then you are to find him not guilty.

Petitioner argues that "if you accept that story" and "if you find" imply that he had the burden of persuading the jury that the

---

1. The Court in *Sandstrom* was concerned with the mandatory aspect of the word "presumes", not with the "ordinary consequences" part of the charge. I assume that the Court of Appeals had the same concern in the cited cases and did not intend to preclude the "consequences" lan-

guage, which in my view provides useful and needed assistance to a juror faced with the instruction that the defendant's state of mind must be proved by the government beyond a reasonable doubt.

gun went off accidentally and that his actions were not wanton or reckless. While a specific instruction to dispel this notion would have been desirable, these instructions "did not have a 'sufficiently devastating impact' on the trial to deny petitioner his due process rights." *Niziolek v. Ashe, supra* at 290 quoting *Grace v. Butterworth, supra* at 6. In light of the jury's verdict that petitioner was guilty of murder in the first degree, which includes the elements of premeditation and deliberation, the instruction on involuntary manslaughter is not critical.

Petitioner also challenges the portions of the jury instructions on the issue of diminished responsibility. While the judge used language on this subject which potentially shifted the burden of showing diminished responsibility to the petitioner, such error would not justify habeas corpus relief because the Commonwealth had no duty to prove the absence of diminished responsibility as a matter of state law. *Lannon v. Commonwealth, supra,* 400 N.E.2d at 866. *Commonwealth v. Lannon,* 364 Mass. 480, 485–486, 306 N.E.2d 248, 251 (1974). Cf. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

For the foregoing reasons, the petition for a writ of habeas corpus is DISMISSED.